1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7  RICHARD CADENASSO,

Plaintiff,                              Case No.  13-cv-05491-JST

8

v.                                      **ORDER GRANTING DEFENDANTS'**

9                                              **MOTION TO TRANSFER VENUE**

10  METROPOLITAN LIFE INSURANCE             Re: ECF Nos. 35, 40
    COMPANY, et al.,

11              Defendants.

12  **I.       INTRODUCTION**

13          Before the Court is Defendant Metropolitan Life Insurance Company's ("MetLife")

14  Motion to Stay this case under the "first-to-file" rule.  MetLife's Motion to Stay, ("MetLife

15  Mot."), ECF No. 35.  In the alternative, MetLife asks the Court to transfer the case to the Southern

16  District of Florida pursuant to 28 U.S.C. § 1404(a). Id.  Defendants Storick Group Company, The

17  Storick Group Corporation, and Scott R. Storick (collectively "Storick Defendants") have filed a

18  Motion to Dismiss for lack of personal jurisdiction under Rule 12(b)(2).  Storick Motion to

19  Dismiss ("Storick Mot."), ECF No. 40.  In the alternative, the Storick Defendants request the

20  Court to transfer the case to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).[1]  Id.

21  For the following reasons, the Court will transfer the case to the Southern District of Florida under

22  the federal statute.

23          The Court finds that the parties' briefs have thoroughly addressed the issues presented, and

24

25  [1] As set forth more fully *infra*, the Court finds transfer appropriate based on MetLife's motion
    alone, and therefore only fully addresses that motion in this order. Since MetLife and the Storick
26  Defendants both ask the Court to transfer this case to the Southern District of Florida, an order
    granting MetLife's motion to transfer will effectively moot the Storick Defendants' motion, and
27  the Storick Defendant's arguments regarding personal jurisdiction can only strengthen the case for
    transfer.  For the sake of completeness and clarity, the Court will make reference to the Storick
28  Motion in its resolution of MetLife's motion.

*United States District Court*
*Northern District of California*

1    accordingly VACATES the hearing scheduled for June 5.

2    **II.    BACKGROUND**

3        **A.    Factual Background and Procedural History**

4        This case involves a putative class action filed by counsel from firms Schubert Jonckheer

5    & Kolbe and Anderson & Wanca ("Anderson" or "the Anderson firm") on behalf of Richard

6    Cadenasso against Defendants MetLife, Storick Group Company, The Storick Group Corporation,

7    and Scott Storick, for violation of the Telephone Consumer Protection Act ("TPCA") of 1991, as

8    amended by the Junk Fax Prevention Act of 2005 ("JFPA"), 47 U.S.C. § 227.  Complaint

9    ("Compl."), ECF No. 1 at ¶ 2.  Defendant MetLife is a life insurance company with its principal

10   place of business in New York City.  Id. at ¶ 9.  Defendant Storick Company, a Florida

11   corporation with its principal place of business in Boca Raton, Florida, markets and sells MetLife

12   products.  Id. at ¶ 10.  The Storick Group Corporation, a North Carolina corporation with its

13   principal place of business in Charlotte, North Carolina, also markets and sells MetLife products.

14   Id. at ¶ 11.  Scott Storick, a principal of both Storick Company and The Storick Group, allegedly

15   played an integral role in the purportedly illegal facsimile advertisement scheme of the other

16   named Defendants.  Id. at ¶ 13.

17       The JFPA "prohibits a person or entity from faxing or having an agent fax advertisements

18   without the recipient's prior express invitation or permission."  Id. at ¶ 2.  Plaintiff claims that

19   "Defendants have sent facsimile transmissions of unsolicited advertisements to Plaintiff in

20   violation of the JFPA, including, but not limited to, the facsimile transmission of [an] unsolicited

21   advertisement on September 5, 2012."  Id. at ¶¶ 2, 15.  Plaintiff proposes the following class

22   definition:

23           All persons who (1) on or after four years prior to the filing of this
             action, (2) were sent telephone facsimile messages of material
24           advertising the commercial availability of any property, goods, or
             services by or on behalf of Defendants, (3) from whom Defendants
25           did not obtain prior express permission or invitation to send those
             faxes, and (4) which did not display a proper opt-out notice.
26

27   Id. at ¶ 23.  Explicitly excluded from the proposed class are "all persons in the state of Missouri."

28   Id.  The Court denied as premature Plaintiff's Motion for Class Certification on January 16, 2014

United States District Court
Northern District of California

United States District Court
Northern District of California

1   without prejudice.  See ECF No. 20.

2       On January 9, 2014, MetLife filed a Notice of Pendency, asking the Court to transfer this

3   case to the Southern District of Florida, which has before it a more advanced putative class action

4   involving the same defendants and nearly identical questions of law and fact.  MetLife's Notice of

5   Pendency, ECF No. 12.  At the February 12, 2014 Case Management Conference, ECF No. 27, the

6   Court informed Defendants that they should file a Motion to Transfer if they wished to seek such

7   relief, which they did on March 5, 2014.  ECF No. 35.

8       Defendant MetLife now asks the Court to take one of several actions.  MetLife's first

9   preference is to have the Court stay this case pending the outcome of the similar Southern District

10  of Florida case, C-Mart, Inc. v. Metro. Life Ins. Co., No. 9:13-cv-80561 (S.D. Fla. June 3, 2013).

11  MetLife Mot. at 6:12-14.  In the alternative, MetLife requests the Court to transfer this case to the

12  Southern District of Florida, either under the "first-to-file" rule or 28 U.S.C. § 1404(a).  MetLife

13  Mot. at 14:6-7.  Before evaluating the merits of Defendants' various arguments, it is necessary to

14  first examine the history of this case and the purportedly related actions.

15      On August 24, 2012, Environmental Progress Inc. ("EPI"), a South Carolina corporation,

16  filed a putative class action against each of this case's four named defendants in the Southern

17  District of Florida for violation of the JFPA.  Envtl. Progress, Inc. v. Metro. Life Ins. Co., No.

18  9:12-cv-80907-DMM (S.D. Fla. Aug. 24, 2012) (Middlebrooks, J.) (hereinafter EPI).  EPI's

19  complaint was submitted by law firm Anderson & Wanca.  Declaration of Judd Grutman

20  ("Grutman Decl."), Ex. A, ECF No. 35-2 at 2.[2]  During discovery, the parties exchanged nearly

21

22  [2] In deciding a motion to transfer venue, the Court may consider factual submissions, including
    declarations, by defendants, who have the burden to justify a change of venue.  Everlast World's
23  Boxing Headquarters Corp. v. Ringside, 928 F. Supp. 2d 753, 737 n.1 (S.D.N.Y. 2013).
    Therefore, the Court will consider the contents of the "Grutman Declaration" and the "Stabile
24  Declaration" attached to MetLife's Motion to Stay.  The Court also will consider the contents of
    the second "Grutman Declaration," attached to MetLife's Reply.  To the extent that the exhibits
25  contained within the "Good Declaration" attached to Plaintiff's Opposition are not duplicative of
26  exhibits present in other Declarations, the Court finds them unnecessary for the resolution of this
    matter.
27

28  Additionally, district courts "may take notice of proceedings in other courts, both within and
    without the federal judicial system, if those proceedings have a direct relation to the matters at

3

United States District Court
Northern District of California

1    150,000 documents and participated in seven depositions.  Declaration of Daniel Stabile, ("Stabile

2    Decl."), ECF No. 35-5, at ¶ 3.  Judge Middlebrooks denied Defendant MetLife's Motion for

3    Summary Judgment on April 3, 2013 and set a bench trial date for April 15, 2013.  Grutman Decl.,

4    Ex. A, ECF No. 35-2, at Dkt. Nos. 121, 126.  However, three days before the trial date, EPI

5    voluntarily dismissed the action. Id. at Dkt. No. 130.

6    While the EPI case was pending before the Southern District of Florida, each named

7    defendant faced another proposed class action lawsuit for violation of the JFPA, this time brought

8    in the Eastern District of Missouri on January 10, 2013 by lead plaintiff C-Mart, Inc.  Grutman

9    Decl., ECF No. 35-2, Ex. B at 19.  Once again, the lead plaintiff was represented by counsel from

10   Anderson.  Id. at 34-35.  MetLife filed a motion to transfer the case to the Southern District of

11   Florida pursuant to 28 U.S.C. § 1404(a), which the court granted on May 31, 2013.  C-Mart, Inc.

12   v. Metro. Life Ins. Co., No. 4:13-CV-00052-AGF, 2013 WL 2403666, at *5 (E.D. Mo. May 31,

13   2013).

14   Once in Florida, the parties engaged in and completed discovery, during which more

15   depositions were taken and thousands of additional pages of documents were exchanged.  Stabile

16   Decl. at ¶¶ 5-6.  On November 21, 2013, MetLife filed an affirmative motion to deny class

17   certification of the nationwide class proposed in C-Mart's complaint.  Grutman Decl., Ex. C, ECF

18   No. 35-2, at Dkt. No. 114.  Shortly thereafter, C-Mart filed a new motion to certify only a subclass

19   of Missouri residents who allegedly received a facsimile advertisement during a 30-day period in

20   August and September of 2012.  Id. at Dkt. No. 127.  On February 4, 2014, Judge Donald

21   Middlebrooks, assigned to C-Mart, certified Plaintiff's Missouri-only class and set an April 7,

22   2014 trial date.[3]  Grutman Decl., Ex. E at 41.  C-Mart is currently pending before Judge

23   _____

24   issue." U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244 (9th Cir.
     1992).  The EPI v. Metro. Life Ins. Co., No. 9:12-cv-80907-DMM (S.D. Fla. Aug. 24, 2010) and
25   C-Mart, Inc. v. Metro. Life Ins. Co., No. 4:13-CV-00052-AGF (E.D. Mo. May 31, 2013)
     proceedings before the Southern District of Florida and the Eastern District of Missouri are
26   "directly related' to this action and may in fact be dispositive.  Accordingly, the Court will take
     notice of those courts' judgments and related filings.
27   [3] MetLife notes that Judge Middlebrooks did not require C-Mart to respond to MetLife's motion to
     deny the nationwide class certification.  MetLife Mot. at 5-6.  After a motion hearing, and without
28   a response from C-Mart, Judge Middlebrooks certified C-Mart's proposed Missouri-only class.

1   Middlebrooks in the Southern District of Florida as both parties prepare for trial.

2     **B.**  **Legal Standards**

3       **1.**   **Transfer of Venue under 28 U.S.C. § 1404(a)**

4     "For the convenience of parties and witnesses, in the interest of justice, a district court may

5   transfer any civil action to any other district where it might have been brought."  28 U.S.C. §

6   1404(a).  The purpose of section 1404(a) is to "prevent the waste of time, energy, and money and

7   to protect litigants, witnesses and the public against unnecessary inconvenience and expense."

8   Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quotation omitted).  A motion for transfer lies

9   within the broad discretion of the district court, and must be determined on an individualized

10  basis.  See Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000).

11    Courts considering transfer must engage in a two-step analysis.  First, courts determine

12  whether the action could have been brought in the target district.  Hoffman v. Blaski, 363 U.S.

13  335, 344 (1960).  Second, courts undertake an "individualized, case-by-case consideration of

14  convenience and fairness."  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting

15  Van Dussen, 376 U.S. at 622).  That analysis considers the convenience of the parties, the

16  convenience of the witnesses, and the interests of justice, as understood through the following

17  eight factors: "(1) the location where the relevant agreements were negotiated and executed,

18  (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the

19  respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of

20  action in the chosen forum, (6) the differences in costs of litigation in the two forums, (7) the

21  availability of compulsory process to compel attendance of unwilling non-party witnesses, and

22  (8) the ease of access to sources of proof."  Jones, 211 F.3d at 498-99.  The moving party bears the

23  burden of establishing the factors in favor of transfer.  Id.

24      **2.**   **First-to-File Rule**

25    The well-established "first to file" rule allows a district court to transfer, stay or dismiss an

26

27  Grutman Decl., Ex. E, ECF No. 35-3.  Judge Middlebrooks's Certification Order is the subject of
    Petitions to Appeal to the Eleventh Circuit that are currently are pending in that Circuit.  MetLife
28  Mot. at 5:20-28; see also Grutman Decl., Ex. F, ECF No. 35-4.

United States District Court
Northern District of California

1    action when a similar complaint has been filed in another federal court.  Alltrade, Inc. v. Uniweld

2    Prods. Inc., 946 F.3d 622, 623 (9th Cir. 1991).  A district court examines three threshold factors in

3    deciding whether to apply the first to file rule: the chronology of the two actions, the similarity of

4    the parties, and the similarity of the issues.  Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93,

5    95 (9th Cir. 1982); Alltrade, 946 F.2d at 625-26.

6          While it has been said that the "first to file" rule "should not be disregarded lightly,"

7    Church of Scientology v. U.S. Dep't of the Army, 611 F.2d 738, 750 (9th Cir. 1979), district

8    courts can, in the exercise of their discretion, dispense with the first-filed principle for reasons of

9    equity.  Ward v. Follett Corp., 158 F.R.D. 645, 648 (N.D. Cal. 1994).  A court may also relax the

10   "first-to-file" rule if the balance of convenience weighs in favor of the later-filed action.  Id.

11   While the Alltrade court cautioned that the respective convenience of the two courts normally

12   "should be addressed to the court in the first filed action" rather to the court in the later-filed

13   action, Alltrade, 946 F.2d at 628, it observed that "[i]n appropriate cases it would be relevant for

14   the court in the second-filed action to give consideration to the convenience of the parties and

15   witnesses."  Id.

16   **III.    ANALYSIS**

17         MetLife proposes that the Court take one of three courses of action.  First, MetLife asks

18   the Court to find that the "first-to-file" rule applies and to stay the current action until C-Mart and

19   the interlocutory appeal associated with the case are resolved.  MetLife Mot. at 6:12-13.

20   Alternatively, MetLife asks the Court to transfer the case to the Southern District of Florida, either

21   pursuant to the "first-to-file" rule or 28 U.S.C. § 1404(a).  Id. at 14:6-7.  The Storick Defendants

22   ask the court to either dismiss the case against them for lack of personal jurisdiction or to transfer

23   the case to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).  Storick Mot. at 6:18,

24   15:5.

25         **A.      Transfer of Venue under 28 U.S.C. § 1404(a)**

26               **1.      Venue in the Target District**

27         MetLife and the Storick Defendants assert that venue is proper in the Southern District of

28   Florida and that Plaintiff Cadenasso could have originally filed this case in that district.  MetLife

United States District Court
Northern District of California

1    Mot. at 15:17-16:6; Storick Mot. at 16:1-22.  In his Opposition, Plaintiff Cadenasso notes that he

2    "does not dispute this case could have been brought in the Southern District of Florida."

3    Plaintiff's Opposition to MetLife's Motion to Stay, ("Opp."), ECF No. 38, at 9:16 n.3.  Moreover,

4    Defendants are currently litigating a nearly-identical class action in the Southern District of

5    Florida, filed by counsel from the Anderson firmhose facts stem from the same allegedly illegal

6    facsimile scheme at issue here.  See C-Mart, Inc. v. Metro. Life Ins. Co., No. 13-90561-CIV, 2014

7    WL 457580 (S.D. Fla. Feb. 4, 2014) (Middlebrooks, J.).

**2.    Transfer in the Interests of Justice**

9        Under the second step of the analysis, the Court must evaluate the convenience and

10   fairness of a transfer of venue on the parties and the potential witnesses in the case.  See Jones, 211

11   F.3d at 498-99.  Turning to the fairness element, MetLife alleges that Plaintiff is plainly "forum

12   shopping."  MetLife Mot. at 20:1.

**a.    Forum Shopping**

14       The Court ordinarily begins with "a strong presumption in favor of plaintiff's choice of

15   forum."  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981).  However, the plaintiff's choice

16   of forum is entitled to minimal deference if the plaintiff chose the forum to escape an unfavorable

17   ruling in a different district.  See Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc., No.

18   03-cv-3711-MHP, 2003 WL 22387598, at *6 (N.D. Cal. Oct. 14, 2003); see also Forrand v. Fed.

19   Exp. Corp., No. 07-cv-4674-TEH, 2008 WL 276389, at *3 (N.D. Cal. Jan. 31, 2008).

20       This Court faced a similar issue in True Health Chiropractic Inc. v. McKesson Corp., No.

21   13-cv-02219-JST, 2013 WL 6000539 (N.D. Cal. Nov. 12, 2013), a putative class action in which

22   plaintiffs alleged that McKesson violated the JFPA by sending unsolicited facsimile

23   advertisements.  In that case, the Court denied McKesson's motion to transfer for several reasons

24   not present here.  First, the Court found that transfer to the Northern District of Ohio was

25   inappropriate because no party to the case resided in that district.  Id. at *4.  In addition, the Court

26   declined to infer forum shopping because "no case [was] currently pending in [another] district[]"

27   and "there was no unfavorable ruling [for Plaintiff] to escape."  Id. at *4.  Finally, the Court found

28   that McKesson had not established that transfer would be convenient for the parties and witnesses

United States District Court
Northern District of California

1    because McKesson was located within the Northern District of California, witnesses and evidence

2    were likely located in that district, and plaintiff True Health was located in the Southern District of

3    Ohio, not the Northern District of Ohio.  Id. at *5.  For all of those reasons, the Court concluded

4    that McKesson had not met its burden to establish the factors that weighed in favor of transfer.

5            This case is distinguishable from True Health Chiropractic Inc.  First, the Court can infer

6    impermissible forum-shopping.  MetLife argues that the Court can infer forum shopping "where,

7    as here, Plaintiff has chosen a forum that has no factual nexus to the case and where plaintiff has

8    another forum equally available to him."  MetLife Mot. at 20:11-13.  Cadenasso refutes MetLife's

9    accusation of forum shopping by offering that Plaintiff's counsel would have no motivation to

10   forum shop because "Plaintiff to date has fared well in the Southern District of Florida."  Opp. at

11   13:12-13.  Cadenasso then notes that the Florida court has "certified the Missouri-only class that

12   Plaintiff requested" and "denied MetLife's preemptory motion to deny class certification."  Id. at

13   13:13-14.  Oddly, after listing the allegedly unfavorable decisions MetLife has suffered in Florida,

14   Cadenasso accuses MetLife of forum shopping by "attempting to send this case to the Southern

15   District of Florida" in an effort to deny Plaintiff the benefit of full discovery.  Id. at 13:23-26.

16           Plaintiff cannot have it both ways.  He cannot argue in one breath that MetLife has been

17   facing unfavorable rulings in the Southern District of Florida, while in the next breath accusing

18   MetLife of forum-shopping itself by attempting to send the case to the same district that has been

19   levying unfavorable decisions against it.

20           Moreover, Plaintiff selectively recites Florida court decisions he views as favorable to him,

21   but he does not address the unfavorable ruling MetLife accuses the Anderson firm of wishing to

22   avoid, namely the EPI court's failure to rule on Anderson's motion to extend the time for

23   discovery to support EPI's nationwide class certification.  See MetLife Mot. at 20:16 n.1; see also

24   Grutman Decl., EFC No. 35-2, Ex. A, at Dkt. No. 103.  While the motion to extend the time for

25   discovery was submitted jointly, there is little question the decision was unfavorable to the

26   Anderson firm because it prevented Plaintiff from garnering evidence to certify a nationwide class

27   that Anderson originally sought to represent in EPI.

28           There is also evidence that Plaintiff seeks to avoid bringing this case, involving a

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1    nationwide class, before Judge Middlebrooks in the Southern District of Florida.  The district

2    court in the Eastern District of Missouri, the district in which the C-Mart action was originally

3    filed, found that "Plaintiff's choice of forum creates the perception of impermissible forum

4    shopping."  C-Mart, Inc. v. Metro. Life Ins. Co., No. 4:13-CV-00052-AGF, 2013 WL 2403666, at

5    *5 (E.D. Mo. May 31, 2013).  After examining the materials accompanying the original EPI

6    lawsuit, the court concluded there is a "likelihood that Plaintiff's counsel, Anderson + Wanca,

7    dismissed the class allegations and the complaint in the [EPI lawsuit] in order to find a more

8    favorable forum."  Id. (citing Thatcher v. Hanover Ins. Grp., Inc., 659 F.3d 1212, 1214 (8th Cir.

9    2011) ("[I]t is inappropriate for a plaintiff to use voluntary dismissal as an avenue for seeking a

10    more favorable forum.")).  It should also be noted that in EPI, Judge Middlebrooks denied EPI's

11    motion to certify a nationwide class of plaintiffs because it "failed to specifically delineate the

12    nature and number or potential claims and claimants or provide a justification for class

13    certification, aside from the conclusory allegations set forth in its Motion."  Grutman Decl., Ex. A,

14    ECF No. 35-2, at Dkt. No. 35.  Moreover, any recent success that C-Mart has had before Judge

15    Middlebrooks does not undercut the Court's inference of forum shopping.  While it is true that

16    Judge Middlebrooks recently certified C-Mart's Missouri-only class in C-Mart, Anderson filed its

17    Complaint in this district only one day after they *filed* their motion to certify the Missouri-only

18    class in C-Mart.  See Grutman Decl., Ex. C, ECF No. 35-2, at Dkt, No. 127; ECF No. 1.  Any

19    favorable ruling submitted in C-Mart after Anderson filed its complaint in this district has no

20    bearing on the question of whether there is evidence of forum shopping.

21        Both parties posit different reasons why Anderson narrowed the class definition in C-Mart

22    and filed this action in this district.  Plaintiff's counsel contends that it moved to certify the

23    Missouri class in C-Mart "based on the strength of the evidence obtained in discovery, and, just as

24    importantly, on the basis of the evidence *not* obtained, including key records from Comcast, one

25    of the two telephone service providers used to transmit the faxes during the multi-year faxing

26    campaign."  Opp. at 2:10-12.  The other service provider, MegaPath, "produced electronic data

27    giving the plaintiff the evidence needed to certify the Missouri-only class, which is limited to

28    MegaPath faxes."  Id. at 2:12-16.  Therefore, because C-Mart was unable to secure its discovery

1   documents from Comcast, "it was not prepared to move for a nationwide class." Id. at 2:17-18.

2   MetLife, however, offers a different explanation. According to MetLife, "narrowing a

3   class to those allegedly sent faxes during the timeframe that MegaPath was the service provider . .

4   . does *not* result in a class of 35,690 Missouri-residents, as Plaintiff has stated." MetLife's Reply

5   at 2:27-3:2. Citing Anderson's own expert's testimony in C-Mart, MetLife explains that

6   MegaPath's records contain more than 7 million transmissions between February 7, 2012 and

7   September 6, 2012, of which nearly 4.5 million were "successfully received error-free" individuals

8   throughout the country. MetLife Mot. at 3:2-5 (citing Second Declaration of Judd Grutman,

9   ("Second Grutman Decl."), ECF No. 41-1, Ex. A at 9). Moreover, even if C-Mart based its action

10  on only those faxes sent between August 7, 2012 and September 6, 2012, for which there is a

11  second set of records,[4] Anderson's expert concluded that during that timeframe, over 600,000

12  faxes sent through MegaPath were "successfully received error-free." Id. More damning,

13  according to MetLife, is that the fax that serves as the basis of Plaintiff Cadenasso's complaint

14  was received on September 5, 2012, a period of time covered by the "already-produced MegaPath

15  . . . records." MetLife's Reply at 4: 8-11. Therefore, according to MetLife, "the [missing]

16  Comcast records are not what drives [*sic*] this new litigation." Id. at 4:3-4.

17  Though MetLife's theory is not bulletproof, it does cast doubt on the Anderson firm's

18  explanation for bringing this action in this district. The Court certainly recognizes that the

19  successful transmission of thousands or millions of faxes does not automatically create a class of

20  the same number of individuals. There also may be legitimate reasons for Plaintiff's counsel to

21  narrow the class definition the extent they did in C-Mart, including, for example, issues

22  surrounding availability of evidence or timely class member identification.

23  Considering both parties' arguments, the Court is left with the inference of forum-

24  shopping. Whatever the reason, Plaintiff seems to be, once again, attempting to avoid bringing a

25  nationwide class action before Judge Middlebrooks in the Southern District of Florida. The

26  combined effect of Anderson voluntarily dismissing the EPI case, re-filing the case in the Eastern

27

28  [4] This is the time period of the class definition that was certified by the C-Mart court. See
    Grutman Decl., ECF No. 35-3, Ex. E at 17.

United States District Court
Northern District of California

1    District of Missouri, and later drastically refining the class once the Missouri court transferred the

2    case back to Judge Middlebrooks in the Southern District of Florida, creates a strong inference of

3    forum-shopping.

### b.    Judicial Economy

5          The need to conserve judicial resources also weighs heavily in favor of transfer.  The

6    Supreme Court has recognized that "[t]o permit a situation in which two cases involving precisely

7    the same issues are simultaneously pending in different District Courts leads to wastefulness of

8    time, energy and money that § 1404(a) was designed to prevent."  Cont'l Grain Co. v. Barge FBL-

9    585, 364 U.S. 19, 26 (1960).  With this in mind, MetLife argues that while litigation in this case

10   "has scarcely begun," the Florida court has "a docket chock full of litigation and discovery . . .

11   [with] numerous motions still pending . . . that relate to the same central facts and issues as here."

12   MetLife Mot. at 21:21-22:4.  In response, Plaintiff contends, without support, that this case cannot

13   be consolidated with C-Mart because of that case's imminent trial date and the fact that C-Mart

14   involves different classes.  See Opp. at 15:11-14.  Moreover, that Judge Middlebrooks is familiar

15   with the issues in both cases "is not enough [to support transfer]."  Id. at 15:15-16.

16         The Court concludes that the transfer of this case to the Southern District of Florida is

17   warranted because it would be likely to promote judicial efficiency.  First, C-Mart is far more

18   advanced than this case, as the parties have already engaged in extensive discovery and are

19   preparing for trial.  Moreover, because C-Mart and this action involve very similar questions of

20   law and fact, the resolution of which will involve much of the same evidence and testimony,

21   requiring this Court to start this litigation anew would lead to the "wastefulness of time, energy

22   and money that § 1404(a) was designed to prevent."  Cont'l Grain Co., 364 U.S. at 26.

23   Additionally, the Court is not persuaded by Plaintiff's argument that, if transferred, the Florida

24   would be unable to consolidate this action with C-Mart because each involves a different

25   representative plaintiff.  Opp. at 15.  The fact that two putative class actions have different class

26   representatives does not, by itself, prevent consolidation of the two cases, as the determination to

27   consolidate related cases turns on a number of different factors.  See Fed. R. Civ. P. 42 (allowing

28   federal courts to consolidate actions that "involve a common question of law or fact")

United States District Court
Northern District of California

11

1    Even if the case is not consolidated with C-Mart, the Southern District of Florida is an

2  appropriate forum because that court, and particularly Judge Middlebrooks, is familiar with the

3  facts underlying this dispute and has already facilitated discovery between the two parties.  See B

4  & B Hardware, Inc. v. Hargis Indus., Inc., CV-06-4871-PA, 2006 WL 4568798, at *6 (C.D. Cal.

5  Nov. 30, 2006) (finding transfer appropriate where first-filed court was in the best position "to

6  formulate the most efficient discovery and pretrial plan for the parties to avoid duplicative,

7  unnecessary discovery efforts by both parties").  The Internal Operating Procedures of the

8  Southern District of Florida indicate that if this case is transferred to that district, there is a high

9  likelihood that the court will assign the case to Judge Middlebrooks, even if the case is not

10  *consolidated* with the ongoing case.  That district's Internal Operating Procedures § 2.15.00(c)

11  provides:

12        Whenever an action or proceeding is filed in the Court which
      involves a subject matter which is a material part of the subject
13        matter of another action or proceeding then pending before this
      Court, or for other reasons the disposition thereof would appear to
14        entail the unnecessary duplication of judicial labor if heard by a
      different Judge, the Judges involved shall determine whether the
15        newly filed action or proceeding shall be transferred to the Judge to
      whom the earlier filed action or proceeding is assigned.
16

17  Internal Operating Procedures of the U.S. District Court for the Southern District of Florida, §

18  2.15.00(c), available at https://www.flsd.uscourts.gov/?page_id=211.[5]   Finally, although both

19  complaints allege different class definitions, such differences are insufficient to undermine the

20  increased efficiency and convenience gained by transferring this case to a different venue.

21        **3.      Convenience Factors**

22    Having found a strong inference of forum shopping, the Court will give Plaintiff's choice

23  of forum less deference.  In addition, two other factors further diminish the deference the Court

24  will afford Plaintiff's choice of venue.  First, Plaintiff Cadenasso represents a putative nationwide

25

26  ─────────────────────

27  [5] The Court will *sua sponte* take Judicial Notice of the Internal Operating Procedures of the United
States District Court for the Southern District of Florida.  See F.R.E. 201.  Because the Internal
28  Operating Procedures are found on that court's official website, they "can be accurately and
readily determined from sources whose accuracy cannot be reasonably questioned."  Id.

12

1    class of plaintiffs, and the Court will therefore give his choice of venue less weight than it would if

2    he brought the suit on an individual basis.  See Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987)

3    ("[W]hen an individual brings a derivative suit or represents a class, the named plaintiff's choice

4    of forum is given less weight.").  Second, a great majority of the operative facts occurred outside

5    of this district and the state of California has no greater stake in this case than any other state.  Id.

6    ("If operative facts have not occurred within the forum and the forum has no interest in the parties

7    or subject matter" a class action plaintiff's choice of forum is entitled to only "minimal

8    consideration.").

9         MetLife argues, without opposition, that Florida is a convenient forum.  Indeed, several of

10   Plaintiff's counsel are currently litigating a substantially similar case against the same Defendants

11   in the Southern District of Florida and the same counsel recently litigated the EPI case in that

12   district throughout the pretrial stage before voluntarily dismissing it.

13        Furthermore, MetLife argues that the Southern District of Florida will be a more

14   convenient forum for potential witnesses in the case.  MetLife Mot. at 17:1-20.  As support,

15   MetLife offers the Storick Defendants' witness list from the C-Mart case, Grutman Decl., Ex. H,

16   ECF No. 35-4, surmising that Plaintiff "will almost certainly rely . . . on the same depositions,

17   documents, and witnesses from the earlier-filed [C-Mart] case[]."  MetLife Mot. at 16:10-12.  The

18   witness list makes clear that most of the individuals listed either as "will call" or "may call" reside

19   in Florida.  Grutman Decl., Ex. H, ECF No. 35-3, (showing that 27 of the 34 individuals listed

20   reside in Florida, while none reside in California).  In addition to the location of the witnesses,

21   MetLife adds that the "fax blaster" behind the allegedly illegal faxing scheme, Robert Martino,

22   lives in Florida, the Storick Defendants reside in Florida, and the MetLife's Fort Lauderdale

23   office, where the illegal faxing allegedly took place, is located in Florida.

24        The gravamen of Plaintiff's argument against transfer is that MetLife has come "woefully

25   short" of meeting its burden to support its motion for transfer.  Opp. at 10:24.  Plaintiff cites to

26   various district court opinions suggesting that MetLife must provide with specificity the content of

27   each witness' testimony and the importance the testimony will have on the case.  Id. at 11:11-12.

28   From there, Plaintiff notes that MetLife "has not stated why the testimony of the four will calls

United States District Court
Northern District of California

13

1    cannot be presented by deposition at trial," "has made no showing as to the specific identity of

2    th[e] non-party witnesses," and "has not provided <u>any</u> evidence that its employees will not testify

3    in this district if asked to do so."  Opp. at 11:13-27.

4         On balance, the Court concludes that MetLife has met its burden of showing

5    inconvenience.  Other than the named Plaintiff, Cadenasso, none of the parties resides in or near

6    California.  More importantly, however, Defendants have demonstrated that the majority of the

7    witnesses and evidence is located in Florida.  That a Florida witnesses' deposition can be

8    presented at trial in California does not, by itself, weigh against transfer to Florida.  See C-Mart,

9    2013 WL 2403666, at *4 (citing Griman v. Makousky, 76 F.3d 151, 153 (7th Cir. 1996) (noting

10   that federal courts prefer live oral testimony).

11        Plaintiff further supports his argument against transfer to the Southern District of Florida

12   by arguing that California "has an interest in this case" because "MetLife sent hundreds of

13   thousands of faxes to California residents, tying up their lines and requiring the targets to pay for

14   MetLife's advertising."  Opp. at 13:4-8.  MetLife does not dispute that the state of California

15   "could have an interest in the controversy" if California residents had received thousands of

16   purported faxes.  MetLife's Reply, ECF No. 41, at 11:10-12.

17        Plaintiff's unremarkable observation that California residents may have received faxes as a

18   part of the alleged nationwide faxing scheme does little to weaken MetLife's argument in favor of

19   transfer.  First, the Complaint makes no reference as to the location of any proportion of class

20   members and only alleges that the number of class members "is at least forty."  Compl. ¶ 24.  The

21   allegation in Plaintiff's Opposition that MetLife sent hundreds of thousands of faxes to California

22   residents is unsupported even by the Complaint, much less by additional probative evidence.

23   Furthermore, Plaintiff makes no argument that Florida residents were excluded from the faxing

24   operation, leaving open the question of whether the state of Florida could have the same or even a

25   greater interest in the case than California does.

26        More convincingly, however, MetLife correctly notes that the only alleged violation of the

27   TCPA occurred in Florida, the state from which the unsolicited faxes were sent.  The TCPA does

28   not make illegal the receipt of an unsolicited facsimile advertisement. It only prohibits a person

United States District Court
Northern District of California

1    from using "any telephone facsimile machine, computer, or other device to *send*, to a telephone

2    facsimile machine, an unsolicited advertisement."  47 U.S.C. § 227(b)(1)(C) (emphasis added).

3    Accordingly, the only violation of law alleged to have taken place occurred in MetLife's Fort

4    Lauderdale office where the faxes were purportedly sent.  This weighs strongly for transferring the

5    case.  See Van Dusen, 376 U.S. at 628 (explaining that "the most convenient forum is frequently

6    the place where the cause of action arose").

7          For the aforementioned reasons, the Court concludes that transfer of this case to the

8    Southern District of Florida pursuant to 28 U.S.C. § 1404(a) is appropriate.

9          **B.     First-to-File Rule**

10         Having found that transfer under 28 U.S.C. § 1404(a) is warranted, the Court does not need

11   to address MetLife's analysis of the "first-to-file" rule's application to this case.  Nonetheless, for

12   the reasons set forth below, the Court finds, as an alternative basis for transfer, that the "first-to-

13   file" rule applies to this case and weighs strongly in favor of transferring the case to the Southern

14   District of Florida.  However, the "first-to-file" rule does not support a decision to stay this case in

15   this district pending the resolution of C-Mart.

16          In the Ninth Circuit, the principles of federal comity are embodied in the "first-to-file"

17   rule.  Ross v. U.S. Bank Nat. Ass'n, 542 F. Supp. 2d 1014, 1020 (N.D. Cal 2008).  Accordingly, a

18   district court has the discretion to transfer, stay, or dismiss an action when a federal action with

19   similar parties and issues has been filed in another district court.  Id. (citing Pacesetter Sys., Inc.,

20   678 F.2d at 94-95).  Importantly, for purposes of this analysis, in a class action, the classes, rather

21   than the class representatives, are compared.  Id. (citing Cal. Jur.3d Actions § 284).

22         **1.     Chronology of the Actions**

23         Both parties agree that the C-Mart action was filed prior to this case.  Plaintiff's counsel

24   initially filed C-Mart in the Eastern District of Missouri on January 10, 2013.  See Grutman Decl.,

25   Ex. C, ECF No. 35-2, at 37-38.  Plaintiff filed his Complaint in this case on November 26, 2013.

26   See ECF No. 1.  The C-Mart action was the first to be filed.

27         **2.     Similarity of the Issues**

28         Additionally, both parties agree that C-Mart and this case involve similar issues.  Indeed,

United States District Court
Northern District of California

United States District Court
Northern District of California

1  as MetLife's Motion makes clear, when arranged side-by-side, the complaint in C-Mart and the

2  complaint in this action are virtually identical.  See MetLife Mot. at 10-11.  Moreover, the

3  resolution of the claims in both cases will turn on similar determinations of fact in an effort to

4  answer the same central question: whether Defendants violated the TPCA by allegedly sending or

5  authorizing others to send unsolicited facsimile advertisements to consumers.  Taking into account

6  the parties' agreement and the fact that both cases will turn on substantially similar issues, the

7  Court is satisfied that C-Mart and this case involve similar issues.

### 3.  Similarity of the Parties

9  The parties disagree as to the similarity of the parties between the C-Mart and Cadenasso

10  actions.  MetLife accurately points out that the four Defendants named in both actions—MetLife

11  and the three Storick Defendants—are exactly the same.  MetLife Mot. at 8:1-2.  However, even

12  though the representative plaintiffs are different, MetLife cites various cases for the proposition

13  that the "first-to-file" rule only requires the parties to be "substantial similar," rather than identical.

14  MetLife Mot. at 7-8 (citing Inherent.com v. Martindale-Hubbell, 420 F. Supp. 2d 1093, 1097

15  (N.D. Cal. 2006) ("The 'sameness' requirement does not mandate that the two actions be identical,

16  but is satisfied if they are 'substantially similar.'").  In addition, MetLife notes that the Court must

17  compare the classes, rather than the class representatives, when comparing the parties.  Id. at 8:10-

18  12.

19  Plaintiff Cadenasso repudiates MetLife's argument and contends that for the "first-to-file"

20  rule to apply there must be a "substantial overlap" between the parties of both actions.  Opp. at

21  4:24-25.  Though the class definitions in both cases are nearly identical, both classes are mutually

22  exclusive; the C-Mart class consists of only Missouri residents, while the Cadenasso class

23  unequivocally contains residents only of the remaining 49 states.  Because there is "*no* overlap of

24  class members, let alone a 'substantial' one," Cadenasso urges the Court to find the "first-to-file"

25  rule inapplicable to this case.

26  Despite the geographic dissimilarity between the classes involved in C-Mart and

27  Cadenasso, the Court is convinced that, taken together, the "first-to-file" factors weigh in favor of

28  transfer.  Courts in the Ninth District have adopted a flexible approach in evaluating the similarity

16

1    of the parties in a "first-to-file" rule analysis.  See PETA, Inc. v. Beyond the Frame, Ltd., 2011

2    WL 686158, at *2 (C.D. Cal. Feb. 16, 2011) (citing Intersearch Worldwide, Ltd. v. Intersearch

3    Grp., Inc., 544 F. Supp.2d 949, 959 n.6 (N.D. Cal. 2008).  "The ["first-to-file"] rule is satisfied if

4    some [of] the parties in one matter are also in the other matter, regardless of whether there are

5    additional unmatched parties in one or both matters."  Id. (citing Kerotest Mfg. v. C-O-Two Fire

6    Equip. Co., 189 F.2d 31, 34-35 (3d Cir. 1951)).  Given that C-Mart was clearly filed prior to this

7    case, both cases involve nearly identical issues, and each case is brought against the same four

8    Defendants, the Court concludes that the "first-to-file" rule correctly applies to this case.  See

9    Pacesetter Sys., Inc., 678 F.2d at 95 (emphasizing that "the 'first-to-file' rule is not a rigid or

10   inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of

11   sound judicial discretion").

12          Having found that the "first-to-file" rule applies to this case, the Court is faced with one of

13   three options: (1) stay this case pending the resolution of the first-filed case; (2) transfer this case

14   to the district in which the first-filed action was brought; or (3) dismiss this case in its entirety.

15   See Alltrade, Inc., 946 F.3d at 623.

16          In its Motion, in the event that the Court finds the "first-to-file" rule applicable, MetLife

17   asks the court to stay this case pending the resolution of C-Mart.  MetLife Mot. at 2:22-3:15.  For

18   support, MetLife explains that there are jurisdictional issues "unsettled" in C-Mart, which have

19   been submitted for interlocutory appeal to the Eleventh Circuit.[6]  Additionally, because there is a

20   "real risk of inconsistent rulings," a stay "is the most appropriate course of action under the

21   circumstances here, so that events can play out in the pending and substantially similar Florida

22   action before the parties proceed further before this Court."  Id. at 13:25-14:2.  Accordingly,

23   MetLife argues that the Court should stay this action until the C-Mart action is resolved because

24   its "essential standing question . . . will necessarily be relevant to the instant action."  Id. at 12:19-

25

26   _____

27   [6] MetLife has appealed Judge Middlebrooks' certification of the Missouri-only class, submitting to
     the Eleventh Circuit the question: Does a class member who did not *receive* a facsimile have
     Article III standing in federal court to pursue a claim under the TCPA?  See MetLife Mot. 5–6;

28   ECF No. 35-4 at 11.

United States District Court
Northern District of California

17

21.

Contrary to MetLife's assertion, the Court finds that a transfer, rather than a stay, is most appropriate in this case.  Although a stay would afford this Court the benefit of the Southern District of Florida's sound resolution of C-Mart, that decision would not be binding on this Court. Moreover, any resolution of MetLife's jurisdictional appeal by the Eleventh Circuit, again, would not be binding on this Court, since this Court is situated in the Ninth Circuit.  See Zuinga v. United Can Co., 812 F.2d 443, 450 (9th Cir. 2087) ("District courts are, of course, bound by the law of their own circuit.")

Additionally, under the Internal Operating Procedures of the Southern District of Florida, a transferred action that bears substantial similarity to a pending case before a Judge of that district may to be assigned to that particular Judge.  See Internal Operating Procedures of the U.S. District Court for the Southern District of Florida, § 2.15.00(c).  Though not guaranteed, there is a strong possibility that this case will be assigned to Judge Middlebrooks, who could then either consolidate this case with C-Mart or issue a stay of this case pending the resolution of MetLife's appeal to the Eleventh Circuit, which would be binding on the Southern District of Florida.  Or, if a stay is warranted, he could be the judge to issue one.  Moreover, even if the case did not get assigned to Judge Middlebrooks, the Court is convinced that, for the reasons set forth *supra*, the convenience of the parties and witnesses, and the interests of justice, weigh heavily in favor of transfer.

IV.     CONCLUSION

For the foregoing reasons, the Court GRANTS MetLife's Motion to Transfer under 28 U.S.C. § 1404(a).  Storick Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer, ECF No. 40, is GRANTED as to the motion to transfer and DENIED AS MOOT as to

/ / /

/ / /

/ / /

/ / /

United States District Court
Northern District of California

18

1    the motion to dismiss for lack of personal jurisdiction.[7]  This action shall be transferred to the

2    United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).

3          **IT IS SO ORDERED.**

4    Dated: April 14, 2014



5                                              _____
                                              JON S. TIGAR
6                                              United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    _____

      [7] Because the crux of the Storick Defendants' personal jurisdiction argument hinges on the Storick
26    Defendants' alleged lack of connection to the state of California, a transfer of this case to the state
      of Florida renders that argument moot.  Moreover, "[t]o address a venue challenge does not
27    require a preliminary finding that the 'transferring court has personal jurisdiction over the
      defendants.'"  Everlast World's Boxing Headquarters Corp., 928 F. Supp. 2d at 741 (quoting
28    Goldlawr, Inc. v. Heiman, 369 U.S. 463, 465 (1962)).

*United States District Court*
*Northern District of California*