UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD CADENASSO,<br><br>Plaintiff,<br><br>v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY, et al.,<br><br>Defendants. | Case No. 13-cv-05491-JST<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE**<br><br>Re: ECF Nos. 35, 40 |

## I. INTRODUCTION

Before the Court is Defendant Metropolitan Life Insurance Company's ("MetLife") Motion to Stay this case under the "first-to-file" rule. MetLife's Motion to Stay, ("MetLife Mot."), ECF No. 35. In the alternative, MetLife asks the Court to transfer the case to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). Id. Defendants Storick Group Company, The Storick Group Corporation, and Scott R. Storick (collectively "Storick Defendants") have filed a Motion to Dismiss for lack of personal jurisdiction under Rule 12(b)(2). Storick Motion to Dismiss ("Storick Mot."), ECF No. 40. In the alternative, the Storick Defendants request the Court to transfer the case to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).[1] Id. For the following reasons, the Court will transfer the case to the Southern District of Florida under the federal statute.

The Court finds that the parties' briefs have thoroughly addressed the issues presented, and

---

[1] As set forth more fully *infra*, the Court finds transfer appropriate based on MetLife's motion alone, and therefore only fully addresses that motion in this order. Since MetLife and the Storick Defendants both ask the Court to transfer this case to the Southern District of Florida, an order granting MetLife's motion to transfer will effectively moot the Storick Defendants' motion, and the Storick Defendant's arguments regarding personal jurisdiction can only strengthen the case for transfer. For the sake of completeness and clarity, the Court will make reference to the Storick Motion in its resolution of MetLife's motion.

accordingly VACATES the hearing scheduled for June 5.

## II. BACKGROUND

### A. Factual Background and Procedural History

This case involves a putative class action filed by counsel from firms Schubert Jonckheer & Kolbe and Anderson & Wanca ("Anderson" or "the Anderson firm") on behalf of Richard Cadenasso against Defendants MetLife, Storick Group Company, The Storick Group Corporation, and Scott Storick, for violation of the Telephone Consumer Protection Act ("TPCA") of 1991, as amended by the Junk Fax Prevention Act of 2005 ("JFPA"), 47 U.S.C. § 227. Complaint ("Compl."), ECF No. 1 at ¶ 2. Defendant MetLife is a life insurance company with its principal place of business in New York City. Id. at ¶ 9. Defendant Storick Company, a Florida corporation with its principal place of business in Boca Raton, Florida, markets and sells MetLife products. Id. at ¶ 10. The Storick Group Corporation, a North Carolina corporation with its principal place of business in Charlotte, North Carolina, also markets and sells MetLife products. Id. at ¶ 11. Scott Storick, a principal of both Storick Company and The Storick Group, allegedly played an integral role in the purportedly illegal facsimile advertisement scheme of the other named Defendants. Id. at ¶ 13.

The JFPA "prohibits a person or entity from faxing or having an agent fax advertisements without the recipient's prior express invitation or permission." Id. at ¶ 2. Plaintiff claims that "Defendants have sent facsimile transmissions of unsolicited advertisements to Plaintiff in violation of the JFPA, including, but not limited to, the facsimile transmission of [an] unsolicited advertisement on September 5, 2012." Id. at ¶¶ 2, 15. Plaintiff proposes the following class definition:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendants, (3) from whom Defendants did not obtain prior express permission or invitation to send those faxes, and (4) which did not display a proper opt-out notice.

Id. at ¶ 23. Explicitly excluded from the proposed class are "all persons in the state of Missouri." Id. The Court denied as premature Plaintiff's Motion for Class Certification on January 16, 2014

2

without prejudice. See ECF No. 20.

On January 9, 2014, MetLife filed a Notice of Pendency, asking the Court to transfer this case to the Southern District of Florida, which has before it a more advanced putative class action involving the same defendants and nearly identical questions of law and fact. MetLife's Notice of Pendency, ECF No. 12. At the February 12, 2014 Case Management Conference, ECF No. 27, the Court informed Defendants that they should file a Motion to Transfer if they wished to seek such relief, which they did on March 5, 2014. ECF No. 35.

Defendant MetLife now asks the Court to take one of several actions. MetLife's first preference is to have the Court stay this case pending the outcome of the similar Southern District of Florida case, C-Mart, Inc. v. Metro. Life Ins. Co., No. 9:13-cv-80561 (S.D. Fla. June 3, 2013). MetLife Mot. at 6:12-14. In the alternative, MetLife requests the Court to transfer this case to the Southern District of Florida, either under the "first-to-file" rule or 28 U.S.C. § 1404(a). MetLife Mot. at 14:6-7. Before evaluating the merits of Defendants' various arguments, it is necessary to first examine the history of this case and the purportedly related actions.

On August 24, 2012, Environmental Progress Inc. ("EPI"), a South Carolina corporation, filed a putative class action against each of this case's four named defendants in the Southern District of Florida for violation of the JFPA. Envtl. Progress, Inc. v. Metro. Life Ins. Co., No. 9:12-cv-80907-DMM (S.D. Fla. Aug. 24, 2012) (Middlebrooks, J.) (hereinafter EPI). EPI's complaint was submitted by law firm Anderson & Wanca. Declaration of Judd Grutman ("Grutman Decl."), Ex. A, ECF No. 35-2 at 2.[2] During discovery, the parties exchanged nearly

---

[2] In deciding a motion to transfer venue, the Court may consider factual submissions, including declarations, by defendants, who have the burden to justify a change of venue. Everlast World's Boxing Headquarters Corp. v. Ringside, 928 F. Supp. 2d 753, 737 n.1 (S.D.N.Y. 2013). Therefore, the Court will consider the contents of the "Grutman Declaration" and the "Stabile Declaration" attached to MetLife's Motion to Stay. The Court also will consider the contents of the second "Grutman Declaration," attached to MetLife's Reply. To the extent that the exhibits contained within the "Good Declaration" attached to Plaintiff's Opposition are not duplicative of exhibits present in other Declarations, the Court finds them unnecessary for the resolution of this matter.

Additionally, district courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at

3

150,000 documents and participated in seven depositions. Declaration of Daniel Stabile, ("Stabile Decl."), ECF No. 35-5, at ¶ 3. Judge Middlebrooks denied Defendant MetLife's Motion for Summary Judgment on April 3, 2013 and set a bench trial date for April 15, 2013. Grutman Decl., Ex. A, ECF No. 35-2, at Dkt. Nos. 121, 126. However, three days before the trial date, EPI voluntarily dismissed the action. Id. at Dkt. No. 130.

While the EPI case was pending before the Southern District of Florida, each named defendant faced another proposed class action lawsuit for violation of the JFPA, this time brought in the Eastern District of Missouri on January 10, 2013 by lead plaintiff C-Mart, Inc. Grutman Decl., ECF No. 35-2, Ex. B at 19. Once again, the lead plaintiff was represented by counsel from Anderson. Id. at 34-35. MetLife filed a motion to transfer the case to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a), which the court granted on May 31, 2013. C-Mart, Inc. v. Metro. Life Ins. Co., No. 4:13-CV-00052-AGF, 2013 WL 2403666, at *5 (E.D. Mo. May 31, 2013).

Once in Florida, the parties engaged in and completed discovery, during which more depositions were taken and thousands of additional pages of documents were exchanged. Stabile Decl. at ¶¶ 5-6. On November 21, 2013, MetLife filed an affirmative motion to deny class certification of the nationwide class proposed in C-Mart's complaint. Grutman Decl., Ex. C, ECF No. 35-2, at Dkt. No. 114. Shortly thereafter, C-Mart filed a new motion to certify only a subclass of Missouri residents who allegedly received a facsimile advertisement during a 30-day period in August and September of 2012. Id. at Dkt. No. 127. On February 4, 2014, Judge Donald Middlebrooks, assigned to C-Mart, certified Plaintiff's Missouri-only class and set an April 7, 2014 trial date.[3] Grutman Decl., Ex. E at 41. C-Mart is currently pending before Judge

---

issue." U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244 (9th Cir. 1992). The EPI v. Metro. Life Ins. Co., No. 9:12-cv-80907-DMM (S.D. Fla. Aug. 24, 2010) and C-Mart, Inc. v. Metro. Life Ins. Co., No. 4:13-CV-00052-AGF (E.D. Mo. May 31, 2013) proceedings before the Southern District of Florida and the Eastern District of Missouri are "directly related' to this action and may in fact be dispositive. Accordingly, the Court will take notice of those courts' judgments and related filings.

[3] MetLife notes that Judge Middlebrooks did not require C-Mart to respond to MetLife's motion to deny the nationwide class certification. MetLife Mot. at 5-6. After a motion hearing, and without a response from C-Mart, Judge Middlebrooks certified C-Mart's proposed Missouri-only class.

Middlebrooks in the Southern District of Florida as both parties prepare for trial.

**B.      Legal Standards**

       **1.      Transfer of Venue under 28 U.S.C. § 1404(a)**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it might have been brought." 28 U.S.C. § 1404(a). The purpose of section 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quotation omitted). A motion for transfer lies within the broad discretion of the district court, and must be determined on an individualized basis. See Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000).

Courts considering transfer must engage in a two-step analysis. First, courts determine whether the action could have been brought in the target district. Hoffman v. Blaski, 363 U.S. 335, 344 (1960). Second, courts undertake an "individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dussen, 376 U.S. at 622). That analysis considers the convenience of the parties, the convenience of the witnesses, and the interests of justice, as understood through the following eight factors: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." Jones, 211 F.3d at 498-99. The moving party bears the burden of establishing the factors in favor of transfer. Id.

       **2.      First-to-File Rule**

The well-established "first to file" rule allows a district court to transfer, stay or dismiss an

---

Grutman Decl., Ex. E, ECF No. 35-3. Judge Middlebrooks's Certification Order is the subject of Petitions to Appeal to the Eleventh Circuit that are currently are pending in that Circuit. MetLife Mot. at 5:20-28; see also Grutman Decl., Ex. F, ECF No. 35-4.

action when a similar complaint has been filed in another federal court. Alltrade, Inc. v. Uniweld Prods. Inc., 946 F.3d 622, 623 (9th Cir. 1991). A district court examines three threshold factors in deciding whether to apply the first to file rule: the chronology of the two actions, the similarity of the parties, and the similarity of the issues. Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 95 (9th Cir. 1982); Alltrade, 946 F.2d at 625-26.

While it has been said that the "first to file" rule "should not be disregarded lightly," Church of Scientology v. U.S. Dep't of the Army, 611 F.2d 738, 750 (9th Cir. 1979), district courts can, in the exercise of their discretion, dispense with the first-filed principle for reasons of equity. Ward v. Follett Corp., 158 F.R.D. 645, 648 (N.D. Cal. 1994). A court may also relax the "first-to-file" rule if the balance of convenience weighs in favor of the later-filed action. Id. While the Alltrade court cautioned that the respective convenience of the two courts normally "should be addressed to the court in the first filed action" rather to the court in the later-filed action, Alltrade, 946 F.2d at 628, it observed that "[i]n appropriate cases it would be relevant for the court in the second-filed action to give consideration to the convenience of the parties and witnesses." Id.

### III. ANALYSIS

MetLife proposes that the Court take one of three courses of action. First, MetLife asks the Court to find that the "first-to-file" rule applies and to stay the current action until C-Mart and the interlocutory appeal associated with the case are resolved. MetLife Mot. at 6:12-13. Alternatively, MetLife asks the Court to transfer the case to the Southern District of Florida, either pursuant to the "first-to-file" rule or 28 U.S.C. § 1404(a). Id. at 14:6-7. The Storick Defendants ask the court to either dismiss the case against them for lack of personal jurisdiction or to transfer the case to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). Storick Mot. at 6:18, 15:5.

#### A. Transfer of Venue under 28 U.S.C. § 1404(a)

##### 1. Venue in the Target District

MetLife and the Storick Defendants assert that venue is proper in the Southern District of Florida and that Plaintiff Cadenasso could have originally filed this case in that district. MetLife

Mot. at 15:17-16:6; Storick Mot. at 16:1-22. In his Opposition, Plaintiff Cadenasso notes that he "does not dispute this case could have been brought in the Southern District of Florida." Plaintiff's Opposition to MetLife's Motion to Stay, ("Opp."), ECF No. 38, at 9:16 n.3. Moreover, Defendants are currently litigating a nearly-identical class action in the Southern District of Florida, filed by counsel from the Anderson firm, whose facts stem from the same allegedly illegal facsimile scheme at issue here. See C-Mart, Inc. v. Metro. Life Ins. Co., No. 13-90561-CIV, 2014 WL 457580 (S.D. Fla. Feb. 4, 2014) (Middlebrooks, J.).

### 2. Transfer in the Interests of Justice

Under the second step of the analysis, the Court must evaluate the convenience and fairness of a transfer of venue on the parties and the potential witnesses in the case. See Jones, 211 F.3d at 498-99. Turning to the fairness element, MetLife alleges that Plaintiff is plainly "forum shopping." MetLife Mot. at 20:1.

#### a. Forum Shopping

The Court ordinarily begins with "a strong presumption in favor of plaintiff's choice of forum." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981). However, the plaintiff's choice of forum is entitled to minimal deference if the plaintiff chose the forum to escape an unfavorable ruling in a different district. See Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc., No. 03-cv-3711-MHP, 2003 WL 22387598, at *6 (N.D. Cal. Oct. 14, 2003); see also Forrand v. Fed. Exp. Corp., No. 07-cv-4674-TEH, 2008 WL 276389, at *3 (N.D. Cal. Jan. 31, 2008).

This Court faced a similar issue in True Health Chiropractic Inc. v. McKesson Corp., No. 13-cv-02219-JST, 2013 WL 6000539 (N.D. Cal. Nov. 12, 2013), a putative class action in which plaintiffs alleged that McKesson violated the JFPA by sending unsolicited facsimile advertisements. In that case, the Court denied McKesson's motion to transfer for several reasons not present here. First, the Court found that transfer to the Northern District of Ohio was inappropriate because no party to the case resided in that district. Id. at *4. In addition, the Court declined to infer forum shopping because "no case [was] currently pending in [another] district[]" and "there was no unfavorable ruling [for Plaintiff] to escape." Id. at *4. Finally, the Court found that McKesson had not established that transfer would be convenient for the parties and witnesses

because McKesson was located within the Northern District of California, witnesses and evidence were likely located in that district, and plaintiff True Health was located in the Southern District of Ohio, not the Northern District of Ohio. Id. at *5. For all of those reasons, the Court concluded that McKesson had not met its burden to establish the factors that weighed in favor of transfer.

This case is distinguishable from True Health Chiropractic Inc. First, the Court can infer impermissible forum-shopping. MetLife argues that the Court can infer forum shopping "where, as here, Plaintiff has chosen a forum that has no factual nexus to the case and where plaintiff has another forum equally available to him." MetLife Mot. at 20:11-13. Cadenasso refutes MetLife's accusation of forum shopping by offering that Plaintiff's counsel would have no motivation to forum shop because "Plaintiff to date has fared well in the Southern District of Florida." Opp. at 13:12-13. Cadenasso then notes that the Florida court has "certified the Missouri-only class that Plaintiff requested" and "denied MetLife's preemptory motion to deny class certification." Id. at 13:13-14. Oddly, after listing the allegedly unfavorable decisions MetLife has suffered in Florida, Cadenasso accuses MetLife of forum shopping by "attempting to send this case to the Southern District of Florida" in an effort to deny Plaintiff the benefit of full discovery. Id. at 13:23-26.

Plaintiff cannot have it both ways. He cannot argue in one breath that MetLife has been facing unfavorable rulings in the Southern District of Florida, while in the next breath accusing MetLife of forum-shopping itself by attempting to send the case to the same district that has been levying unfavorable decisions against it.

Moreover, Plaintiff selectively recites Florida court decisions he views as favorable to him, but he does not address the unfavorable ruling MetLife accuses the Anderson firm of wishing to avoid, namely the EPI court's failure to rule on Anderson's motion to extend the time for discovery to support EPI's nationwide class certification. See MetLife Mot. at 20:16 n.1; see also Grutman Decl., EFC No. 35-2, Ex. A, at Dkt. No. 103. While the motion to extend the time for discovery was submitted jointly, there is little question the decision was unfavorable to the Anderson firm because it prevented Plaintiff from garnering evidence to certify a nationwide class that Anderson originally sought to represent in EPI.

There is also evidence that Plaintiff seeks to avoid bringing this case, involving a

nationwide class, before Judge Middlebrooks in the Southern District of Florida. The district court in the Eastern District of Missouri, the district in which the C-Mart action was originally filed, found that "Plaintiff's choice of forum creates the perception of impermissible forum shopping." C-Mart, Inc. v. Metro. Life Ins. Co., No. 4:13-CV-00052-AGF, 2013 WL 2403666, at *5 (E.D. Mo. May 31, 2013). After examining the materials accompanying the original EPI lawsuit, the court concluded there is a "likelihood that Plaintiff's counsel, Anderson + Wanca, dismissed the class allegations and the complaint in the [EPI lawsuit] in order to find a more favorable forum." Id. (citing Thatcher v. Hanover Ins. Grp., Inc., 659 F.3d 1212, 1214 (8th Cir. 2011) ("[I]t is inappropriate for a plaintiff to use voluntary dismissal as an avenue for seeking a more favorable forum.")). It should also be noted that in EPI, Judge Middlebrooks denied EPI's motion to certify a nationwide class of plaintiffs because it "failed to specifically delineate the nature and number or potential claims and claimants or provide a justification for class certification, aside from the conclusory allegations set forth in its Motion." Grutman Decl., Ex. A, ECF No. 35-2, at Dkt. No. 35. Moreover, any recent success that C-Mart has had before Judge Middlebrooks does not undercut the Court's inference of forum shopping. While it is true that Judge Middlebrooks recently certified C-Mart's Missouri-only class in C-Mart, Anderson filed its Complaint in this district only one day after they *filed* their motion to certify the Missouri-only class in C-Mart. See Grutman Decl., Ex. C, ECF No. 35-2, at Dkt, No. 127; ECF No. 1. Any favorable ruling submitted in C-Mart after Anderson filed its complaint in this district has no bearing on the question of whether there is evidence of forum shopping.

Both parties posit different reasons why Anderson narrowed the class definition in C-Mart and filed this action in this district. Plaintiff's counsel contends that it moved to certify the Missouri class in C-Mart "based on the strength of the evidence obtained in discovery, and, just as importantly, on the basis of the evidence *not* obtained, including key records from Comcast, one of the two telephone service providers used to transmit the faxes during the multi-year faxing campaign." Opp. at 2:10-12. The other service provider, MegaPath, "produced electronic data giving the plaintiff the evidence needed to certify the Missouri-only class, which is limited to MegaPath faxes." Id. at 2:12-16. Therefore, because C-Mart was unable to secure its discovery

9

documents from Comcast, "it was not prepared to move for a nationwide class." Id. at 2:17-18.

MetLife, however, offers a different explanation. According to MetLife, "narrowing a class to those allegedly sent faxes during the timeframe that MegaPath was the service provider . . . does *not* result in a class of 35,690 Missouri-residents, as Plaintiff has stated." MetLife's Reply at 2:27-3:2. Citing Anderson's own expert's testimony in C-Mart, MetLife explains that MegaPath's records contain more than 7 million transmissions between February 7, 2012 and September 6, 2012, of which nearly 4.5 million were "successfully received error-free" individuals throughout the country. MetLife Mot. at 3:2-5 (citing Second Declaration of Judd Grutman, ("Second Grutman Decl."), ECF No. 41-1, Ex. A at 9). Moreover, even if C-Mart based its action on only those faxes sent between August 7, 2012 and September 6, 2012, for which there is a second set of records,[4] Anderson's expert concluded that during that timeframe, over 600,000 faxes sent through MegaPath were "successfully received error-free." Id. More damning, according to MetLife, is that the fax that serves as the basis of Plaintiff Cadenasso's complaint was received on September 5, 2012, a period of time covered by the "already-produced MegaPath . . . records." MetLife's Reply at 4: 8-11. Therefore, according to MetLife, "the [missing] Comcast records are not what drives [*sic*] this new litigation." Id. at 4:3-4.

Though MetLife's theory is not bulletproof, it does cast doubt on the Anderson firm's explanation for bringing this action in this district. The Court certainly recognizes that the successful transmission of thousands or millions of faxes does not automatically create a class of the same number of individuals. There also may be legitimate reasons for Plaintiff's counsel to narrow the class definition the extent they did in C-Mart, including, for example, issues surrounding availability of evidence or timely class member identification.

Considering both parties' arguments, the Court is left with the inference of forum-shopping. Whatever the reason, Plaintiff seems to be, once again, attempting to avoid bringing a nationwide class action before Judge Middlebrooks in the Southern District of Florida. The combined effect of Anderson voluntarily dismissing the EPI case, re-filing the case in the Eastern

---

[4] This is the time period of the class definition that was certified by the C-Mart court. See Grutman Decl., ECF No. 35-3, Ex. E at 17.

1 District of Missouri, and later drastically refining the class once the Missouri court transferred the
2 case back to Judge Middlebrooks in the Southern District of Florida, creates a strong inference of
3 forum-shopping.

### b. Judicial Economy

The need to conserve judicial resources also weighs heavily in favor of transfer. The Supreme Court has recognized that "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to wastefulness of time, energy and money that § 1404(a) was designed to prevent." Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19, 26 (1960). With this in mind, MetLife argues that while litigation in this case "has scarcely begun," the Florida court has "a docket chock full of litigation and discovery . . . [with] numerous motions still pending . . . that relate to the same central facts and issues as here." MetLife Mot. at 21:21-22:4. In response, Plaintiff contends, without support, that this case cannot be consolidated with C-Mart because of that case's imminent trial date and the fact that C-Mart involves different classes. See Opp. at 15:11-14. Moreover, that Judge Middlebrooks is familiar with the issues in both cases "is not enough [to support transfer]." Id. at 15:15-16.

The Court concludes that the transfer of this case to the Southern District of Florida is warranted because it would be likely to promote judicial efficiency. First, C-Mart is far more advanced than this case, as the parties have already engaged in extensive discovery and are preparing for trial. Moreover, because C-Mart and this action involve very similar questions of law and fact, the resolution of which will involve much of the same evidence and testimony, requiring this Court to start this litigation anew would lead to the "wastefulness of time, energy and money that § 1404(a) was designed to prevent." Cont'l Grain Co., 364 U.S. at 26. Additionally, the Court is not persuaded by Plaintiff's argument that, if transferred, the Florida court would be unable to consolidate this action with C-Mart because each involves a different representative plaintiff. Opp. at 15. The fact that two putative class actions have different class representatives does not, by itself, prevent consolidation of the two cases, as the determination to consolidate related cases turns on a number of different factors. See Fed. R. Civ. P. 42 (allowing federal courts to consolidate actions that "involve a common question of law or fact")

11

Even if the case is not consolidated with C-Mart, the Southern District of Florida is an appropriate forum because that court, and particularly Judge Middlebrooks, is familiar with the facts underlying this dispute and has already facilitated discovery between the two parties. See B & B Hardware, Inc. v. Hargis Indus., Inc., CV-06-4871-PA, 2006 WL 4568798, at *6 (C.D. Cal. Nov. 30, 2006) (finding transfer appropriate where first-filed court was in the best position "to formulate the most efficient discovery and pretrial plan for the parties to avoid duplicative, unnecessary discovery efforts by both parties"). The Internal Operating Procedures of the Southern District of Florida indicate that if this case is transferred to that district, there is a high likelihood that the court will assign the case to Judge Middlebrooks, even if the case is not *consolidated* with the ongoing case. That district's Internal Operating Procedures § 2.15.00(c) provides:

> Whenever an action or proceeding is filed in the Court which involves a subject matter which is a material part of the subject matter of another action or proceeding then pending before this Court, or for other reasons the disposition thereof would appear to entail the unnecessary duplication of judicial labor if heard by a different Judge, the Judges involved shall determine whether the newly filed action or proceeding shall be transferred to the Judge to whom the earlier filed action or proceeding is assigned.

Internal Operating Procedures of the U.S. District Court for the Southern District of Florida, § 2.15.00(c), available at https://www.flsd.uscourts.gov/?page_id=211.[5] Finally, although both complaints allege different class definitions, such differences are insufficient to undermine the increased efficiency and convenience gained by transferring this case to a different venue.

### 3. Convenience Factors

Having found a strong inference of forum shopping, the Court will give Plaintiff's choice of forum less deference. In addition, two other factors further diminish the deference the Court will afford Plaintiff's choice of venue. First, Plaintiff Cadenasso represents a putative nationwide

---

[5] The Court will *sua sponte* take Judicial Notice of the Internal Operating Procedures of the United States District Court for the Southern District of Florida. See F.R.E. 201. Because the Internal Operating Procedures are found on that court's official website, they "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Id.

12

class of plaintiffs, and the Court will therefore give his choice of venue less weight than it would if he brought the suit on an individual basis. See Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987) ("[W]hen an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight."). Second, a great majority of the operative facts occurred outside of this district and the state of California has no greater stake in this case than any other state. Id. ("If operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter" a class action plaintiff's choice of forum is entitled to only "minimal consideration.").

MetLife argues, without opposition, that Florida is a convenient forum. Indeed, several of Plaintiff's counsel are currently litigating a substantially similar case against the same Defendants in the Southern District of Florida and the same counsel recently litigated the EPI case in that district throughout the pretrial stage before voluntarily dismissing it.

Furthermore, MetLife argues that the Southern District of Florida will be a more convenient forum for potential witnesses in the case. MetLife Mot. at 17:1-20. As support, MetLife offers the Storick Defendants' witness list from the C-Mart case, Grutman Decl., Ex. H, ECF No. 35-4, surmising that Plaintiff "will almost certainly rely . . . on the same depositions, documents, and witnesses from the earlier-filed [C-Mart] case[]." MetLife Mot. at 16:10-12. The witness list makes clear that most of the individuals listed either as "will call" or "may call" reside in Florida. Grutman Decl., Ex. H, ECF No. 35-3, (showing that 27 of the 34 individuals listed reside in Florida, while none reside in California). In addition to the location of the witnesses, MetLife adds that the "fax blaster" behind the allegedly illegal faxing scheme, Robert Martino, lives in Florida, the Storick Defendants reside in Florida, and the MetLife's Fort Lauderdale office, where the illegal faxing allegedly took place, is located in Florida.

The gravamen of Plaintiff's argument against transfer is that MetLife has come "woefully short" of meeting its burden to support its motion for transfer. Opp. at 10:24. Plaintiff cites to various district court opinions suggesting that MetLife must provide with specificity the content of each witness' testimony and the importance the testimony will have on the case. Id. at 11:11-12. From there, Plaintiff notes that MetLife "has not stated why the testimony of the four will calls

cannot be presented by deposition at trial," "has made no showing as to the specific identity of th[e] non-party witnesses," and "has not provided <u>any</u> evidence that its employees will not testify in this district if asked to do so." Opp. at 11:13-27.

On balance, the Court concludes that MetLife has met its burden of showing inconvenience. Other than the named Plaintiff, Cadenasso, none of the parties resides in or near California. More importantly, however, Defendants have demonstrated that the majority of the witnesses and evidence is located in Florida. That a Florida witnesses' deposition can be presented at trial in California does not, by itself, weigh against transfer to Florida. See C-Mart, 2013 WL 2403666, at *4 (citing Griman v. Makousky, 76 F.3d 151, 153 (7th Cir. 1996) (noting that federal courts prefer live oral testimony).

Plaintiff further supports his argument against transfer to the Southern District of Florida by arguing that California "has an interest in this case" because "MetLife sent hundreds of thousands of faxes to California residents, tying up their lines and requiring the targets to pay for MetLife's advertising." Opp. at 13:4-8. MetLife does not dispute that the state of California "could have an interest in the controversy" if California residents had received thousands of purported faxes. MetLife's Reply, ECF No. 41, at 11:10-12.

Plaintiff's unremarkable observation that California residents may have received faxes as a part of the alleged nationwide faxing scheme does little to weaken MetLife's argument in favor of transfer. First, the Complaint makes no reference as to the location of any proportion of class members and only alleges that the number of class members "is at least forty." Compl. ¶ 24. The allegation in Plaintiff's Opposition that MetLife sent hundreds of thousands of faxes to California residents is unsupported even by the Complaint, much less by additional probative evidence. Furthermore, Plaintiff makes no argument that Florida residents were excluded from the faxing operation, leaving open the question of whether the state of Florida could have the same or even a greater interest in the case than California does.

More convincingly, however, MetLife correctly notes that the only alleged violation of the TCPA occurred in Florida, the state from which the unsolicited faxes were sent. The TCPA does not make illegal the receipt of an unsolicited facsimile advertisement. It only prohibits a person

14

from using "any telephone facsimile machine, computer, or other device to *send*, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C) (emphasis added). Accordingly, the only violation of law alleged to have taken place occurred in MetLife's Fort Lauderdale office where the faxes were purportedly sent. This weighs strongly for transferring the case. See Van Dusen, 376 U.S. at 628 (explaining that "the most convenient forum is frequently the place where the cause of action arose").

For the aforementioned reasons, the Court concludes that transfer of this case to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a) is appropriate.

### B. First-to-File Rule

Having found that transfer under 28 U.S.C. § 1404(a) is warranted, the Court does not need to address MetLife's analysis of the "first-to-file" rule's application to this case. Nonetheless, for the reasons set forth below, the Court finds, as an alternative basis for transfer, that the "first-to-file" rule applies to this case and weighs strongly in favor of transferring the case to the Southern District of Florida. However, the "first-to-file" rule does not support a decision to stay this case in this district pending the resolution of C-Mart.

In the Ninth Circuit, the principles of federal comity are embodied in the "first-to-file" rule. Ross v. U.S. Bank Nat. Ass'n, 542 F. Supp. 2d 1014, 1020 (N.D. Cal 2008). Accordingly, a district court has the discretion to transfer, stay, or dismiss an action when a federal action with similar parties and issues has been filed in another district court. Id. (citing Pacesetter Sys., Inc., 678 F.2d at 94-95). Importantly, for purposes of this analysis, in a class action, the classes, rather than the class representatives, are compared. Id. (citing Cal. Jur.3d Actions § 284).

#### 1. Chronology of the Actions

Both parties agree that the C-Mart action was filed prior to this case. Plaintiff's counsel initially filed C-Mart in the Eastern District of Missouri on January 10, 2013. See Grutman Decl., Ex. C, ECF No. 35-2, at 37-38. Plaintiff filed his Complaint in this case on November 26, 2013. See ECF No. 1. The C-Mart action was the first to be filed.

#### 2. Similarity of the Issues

Additionally, both parties agree that C-Mart and this case involve similar issues. Indeed,

as MetLife's Motion makes clear, when arranged side-by-side, the complaint in C-Mart and the complaint in this action are virtually identical. See MetLife Mot. at 10-11. Moreover, the resolution of the claims in both cases will turn on similar determinations of fact in an effort to answer the same central question: whether Defendants violated the TPCA by allegedly sending or authorizing others to send unsolicited facsimile advertisements to consumers. Taking into account the parties' agreement and the fact that both cases will turn on substantially similar issues, the Court is satisfied that C-Mart and this case involve similar issues.

### 3. Similarity of the Parties

The parties disagree as to the similarity of the parties between the C-Mart and Cadenasso actions. MetLife accurately points out that the four Defendants named in both actions—MetLife and the three Storick Defendants—are exactly the same. MetLife Mot. at 8:1-2. However, even though the representative plaintiffs are different, MetLife cites various cases for the proposition that the "first-to-file" rule only requires the parties to be "substantial similar," rather than identical. MetLife Mot. at 7-8 (citing Inherent.com v. Martindale-Hubbell, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006) ("The 'sameness' requirement does not mandate that the two actions be identical, but is satisfied if they are 'substantially similar.'")). In addition, MetLife notes that the Court must compare the classes, rather than the class representatives, when comparing the parties. Id. at 8:10-12.

Plaintiff Cadenasso repudiates MetLife's argument and contends that for the "first-to-file" rule to apply there must be a "substantial overlap" between the parties of both actions. Opp. at 4:24-25. Though the class definitions in both cases are nearly identical, both classes are mutually exclusive; the C-Mart class consists of only Missouri residents, while the Cadenasso class unequivocally contains residents only of the remaining 49 states. Because there is "*no* overlap of class members, let alone a 'substantial' one," Cadenasso urges the Court to find the "first-to-file" rule inapplicable to this case.

Despite the geographic dissimilarity between the classes involved in C-Mart and Cadenasso, the Court is convinced that, taken together, the "first-to-file" factors weigh in favor of transfer. Courts in the Ninth District have adopted a flexible approach in evaluating the similarity

16

of the parties in a "first-to-file" rule analysis. See PETA, Inc. v. Beyond the Frame, Ltd., 2011 WL 686158, at *2 (C.D. Cal. Feb. 16, 2011) (citing Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc., 544 F. Supp.2d 949, 959 n.6 (N.D. Cal. 2008). "The ["first-to-file"] rule is satisfied if some [of] the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one or both matters." Id. (citing Kerotest Mfg. v. C-O-Two Fire Equip. Co., 189 F.2d 31, 34-35 (3d Cir. 1951)). Given that C-Mart was clearly filed prior to this case, both cases involve nearly identical issues, and each case is brought against the same four Defendants, the Court concludes that the "first-to-file" rule correctly applies to this case. See Pacesetter Sys., Inc., 678 F.2d at 95 (emphasizing that "the 'first-to-file' rule is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial discretion").

Having found that the "first-to-file" rule applies to this case, the Court is faced with one of three options: (1) stay this case pending the resolution of the first-filed case; (2) transfer this case to the district in which the first-filed action was brought; or (3) dismiss this case in its entirety. See Alltrade, Inc., 946 F.3d at 623.

In its Motion, in the event that the Court finds the "first-to-file" rule applicable, MetLife asks the court to stay this case pending the resolution of C-Mart. MetLife Mot. at 2:22-3:15. For support, MetLife explains that there are jurisdictional issues "unsettled" in C-Mart, which have been submitted for interlocutory appeal to the Eleventh Circuit.[6] Additionally, because there is a "real risk of inconsistent rulings," a stay "is the most appropriate course of action under the circumstances here, so that events can play out in the pending and substantially similar Florida action before the parties proceed further before this Court." Id. at 13:25-14:2. Accordingly, MetLife argues that the Court should stay this action until the C-Mart action is resolved because its "essential standing question . . . will necessarily be relevant to the instant action." Id. at 12:19-

---

[6] MetLife has appealed Judge Middlebrooks' certification of the Missouri-only class, submitting to the Eleventh Circuit the question: Does a class member who did not *receive* a facsimile have Article III standing in federal court to pursue a claim under the TCPA? See MetLife Mot. 5–6; ECF No. 35-4 at 11.

17

21.

Contrary to MetLife's assertion, the Court finds that a transfer, rather than a stay, is most appropriate in this case. Although a stay would afford this Court the benefit of the Southern District of Florida's sound resolution of C-Mart, that decision would not be binding on this Court. Moreover, any resolution of MetLife's jurisdictional appeal by the Eleventh Circuit, again, would not be binding on this Court, since this Court is situated in the Ninth Circuit. See Zuinga v. United Can Co., 812 F.2d 443, 450 (9th Cir. 2087) ("District courts are, of course, bound by the law of their own circuit.")

Additionally, under the Internal Operating Procedures of the Southern District of Florida, a transferred action that bears substantial similarity to a pending case before a Judge of that district may to be assigned to that particular Judge. See Internal Operating Procedures of the U.S. District Court for the Southern District of Florida, § 2.15.00(c). Though not guaranteed, there is a strong possibility that this case will be assigned to Judge Middlebrooks, who could then either consolidate this case with C-Mart or issue a stay of this case pending the resolution of MetLife's appeal to the Eleventh Circuit, which would be binding on the Southern District of Florida. Or, if a stay is warranted, he could be the judge to issue one. Moreover, even if the case did not get assigned to Judge Middlebrooks, the Court is convinced that, for the reasons set forth *supra*, the convenience of the parties and witnesses, and the interests of justice, weigh heavily in favor of transfer.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS MetLife's Motion to Transfer under 28 U.S.C. § 1404(a). Storick Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer, ECF No. 40, is GRANTED as to the motion to transfer and DENIED AS MOOT as to

/ / /

/ / /

/ / /

/ / /

the motion to dismiss for lack of personal jurisdiction.[7]  This action shall be transferred to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).

**IT IS SO ORDERED.**

Dated: April 14, 2014

_____
JON S. TIGAR
United States District Judge

---

[7] Because the crux of the Storick Defendants' personal jurisdiction argument hinges on the Storick Defendants' alleged lack of connection to the state of California, a transfer of this case to the state of Florida renders that argument moot.  Moreover, "[t]o address a venue challenge does not require a preliminary finding that the 'transferring court has personal jurisdiction over the defendants.'" Everlast World's Boxing Headquarters Corp., 928 F. Supp. 2d at 741 (quoting Goldlawr, Inc. v. Heiman, 369 U.S. 463, 465 (1962)).

19